·CHAPEL (UNITED STATES v.). See Case No. 14,781.

·CHAPELS (UNITED STATES v.). See Case No. 14,782.

---

# Case No. 2,597.

### CHAPIN v. The E. BRAINARD.

### BRAINARD et al. v. The TRAVELLER.

[N. Y. Times, July 1, 1854, p. 3.]

District Court, S. D. New York. June 30, 1854.

#### COLLISION—LOOKOUT—LIGHT.

[1. Though a doubt exists as to the presence ·of a proper lookout on a colliding steamer, yet, if it is apparent that everything possible under the circumstances was done, and that the failure to have such a lookout did not contribute to the collision, the steamer is not in fault for that reason, as, by the rule laid down in The Genesee Chief, 12 How. (53 U. S.) 443, the absence of a proper lookout is only prima facie evidence of negligence.]

[2. A schooner approaching a steamer having lights at her bow and stern at right angles, and those on board supposing the steamer to be a vessel at anchor, luffed to avoid her, thereby causing a collision. Held, that the schooner was in fault.]

In admiralty. This libel was filed by [Chester W. Chapin] the owner of the steamboat Traveller, to recover the amount of damages occasioned to her by a collision with the schooner on the morning of the 20th of November, 1853, about the break of day, near Riker's island. The Traveller was on her regular trip from New Haven to New York, and the schooner was bound through the Sound from New York.

Mr. Leveridge, for libellant.

Mr. Morton and Brainard & Rice, for claimants.

Before INGERSOLL, District Judge.

BY THE COURT. Some facts in this case are not disputed, and there are some about which the witnesses differ very much. The position of the vessels at the time of collision admits of no doubt. The schooner struck the Traveller on her larboard side, about 30 or 40 feet from the stem, at an angle of about 45°. The witnesses from both vessels state that to be the case, and there can be no doubt that such was the position. Just before the collision, the helm of the schooner was turned, so that she fell off. It appears very clearly that previous to such change of course, she must have been going about at right angles with the course of the Traveller. I think any man must come to that conclusion upon the evidence. The position in which the Traveller was, appears manifest by looking at the chart. She had passed Hunt's Point, and the pilot states that she made a direct course from Hunt's Point to the northern end of the North Brother. The schooner claims that she kept near the South Brother, but it seems to me conclusive that if the schooner was between the South Brother and Riker's island, and near the flats, as she claims to have been, it was impossible that they could have come together at an angle of 45°; she must have been in a different position to have met the steamboat as she did. But if the schooner was in the position described by those on board the Traveller, I can see that she might have met her as she did, in consequence of her luff. If the collision took place near the flats between the South Brother and Riker's island, it could not have happened as it did. It must have been therefore when she was in a different position from that now claimed by her. If it was when the boat was near to the North

Brother, then I can see how the vessels could have met each other at the angle of 45°.

It is claimed by the respondents that the steamer was in fault in having no proper lookout. The rule as laid down in the case of The Genesee Chief [12 How. (53 U. S.) 443] is, that unless a steamboat has forward a careful and faithful lookout, whose special business it is to look out, the absence of such lookout shall be deemed prima facie evidence of negligence. But it is only prima facie evidence, and may be removed by other evidence. It is doubtful whether there was on the steamboat such a lookout as is required by the case of The Genesee Chief, but if there had been it would not have helped the case. Nothing more could have been done on board the steamboat than was done. It is also claimed that the steamboat had not proper lights. The evidence is clear that there was a light at her bow, and another at her stern. The light at the bow was so placed as to throw its light forward, so that, if the schooner was going at right angles, it might easily have been unseen from her, while such was her direction. After she passed the South Brother, she luffed. It seems, from the evidence, that, for some reason or other, the light which was seen on board the Traveller was supposed by those on board the schooner to be a light on a vessel at anchor. The light was in motion, and the vessels were moving at right angles with each other. How, then, they could have supposed that the light was on a vessel at anchor, is unaccountable to me. But it appears, from the evidence, that they luffed to avoid this vessel at anchor, as they supposed it to be, and only discovered that it was a steamboat when it was too late to save themselves from the danger into which their luff had brought them. The steamboat does not appear to have been in fault, but the collision was caused by the fault of the schooner.

Decree, therefore, for libellants, with a reference.

Erastus Brainard et al. v. The Steamboat Traveller. This was a cross suit, arising out of the same collision, brought by the owners of the schooner. Libel dismissed, with costs.